UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ERNEST C. WHEELER,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL CHERTOFF, Secretary, Department of Homeland Security, Federal Emergency Management Agency,<br><br>    Defendant. | Case No: C 08-1738 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket 31] |

Plaintiff, Ernest Wheeler ("Plaintiff"), filed the instant action against his former employer, the Federal Emergency Management Agency ("FEMA" or "Defendant"), by and through Michael Chertoff, as its Secretary. The Complaint alleges claims under the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII") for age and gender discrimination, hostile work environment and retaliation. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331. The parties are presently before the Court on Defendant's Motion for Summary Judgment. (Docket 31.) Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion as to Plaintiff's claims for age and gender discrimination and hostile work environment, and DENIES the motion as to Plaintiff's claim for retaliation. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

**I.     BACKGROUND**

On November 1, 2001, FEMA hired Plaintiff (male, DOB 6/30/44) to work as a Disaster Assistance Employee ("DAE"), in the position of a Safety Cadre. As a DAE, Plaintiff was deployed throughout the year to various federal disasters to provide for the safety and health of FEMA personnel at the disaster site. In the field, DAEs reported to the federal coordinating

officer.  (Tseng Decl. Ex. A at 42:21-43:1.)  Otherwise, they were supervised by a cadre manager who, in turn, reported to the safety section chief.  (Id. at 38:18-28.)  Plaintiff was hired for a one-year appointment, which was subject to annual renewal.  (Id. Ex. A at 32:8-11, 32:19-23.)

From November 2001 through 2005, FEMA deployed Plaintiff to at least 11 sites throughout the United States as part of a disaster response team.  (Pl.'s Ex. D ¶ 6.)  He regularly received the highest possible rating in ten of those deployments, along with a number of commendations and awards.  (E.g., Pl.'s Ex. C ¶ 27; D ¶ 6; Ex. F at 2-17; Ex. G ¶ 19.)  He also was highly-regarded by a number of his co-workers and supervisors.  (Id.)  However, Plaintiff began to experience difficultly on the job when Judith Reilly became his supervisor in 2004.  Plaintiff was not unique in this regard, as a number of FEMA workers had issues working with Reilly as a result of her interpersonal issues and controversial style of management.  (Id. Ex. B ¶ 32; Ex. A ¶ 22; Ex. C ¶ 27.)  A number of those employees have complained and/or taken legal action as a result of Reilly's behavior.  (Id. Ex. E at 120:3-9; 121:7-22; 122:6-8; 122:20-22; 127:13-20; 129:3-10; 131:4-10; 134:19-135:1.)

Plaintiff and Reilly's tumultuous relationship declined further in the Fall of 2004 following his assignment to Florida in connection with a hurricane disaster.  Plaintiff claims that Reilly, for her own political reasons, instructed him to submit a request to the disaster site for a $1 million mission assignment (which essentially is a work order by FEMA to another federal agency).  (Id. Ex. O ¶ 53; Ex. D. ¶ 2.)  She also instructed him to backdate the request to pay Federal OSHA personnel who already were at the site.  (Id. Ex. D ¶ 2.)  Plaintiff considered Reilly's requests to be illegal and both he and his on-site superior, Mike Bolch, refused to comply.  Apparently unhappy with Plaintiff's refusal to cooperate, Reilly allegedly harassed him, *inter alia,* by calling him incessantly in the field, and ultimately, by terminating his (as well as Bolch's) assignment early.  (Id.; Ex. O ¶ 54.)  Defendant claims that Plaintiff was removed from the field due to communication problems.  (Def.'s Mot. at 5.)

On or about November 9, 2004, Plaintiff was counseled by telephone by Reilly and Ed Sachs, then a cadre manager.  During the call, they discussed concerns regarding the Florida assignment, as well as issues that had arisen during a subsequent assignment in North Carolina.

1  (Def.'s Mot. at 8.)  Apparently after the call, Plaintiff notified Reilly that he intended to file an EEO claim against her.  (Pl.'s Ex. J.)  On November 10, 2004, Reilly wrote-up Plaintiff for the Florida incident which had occurred months earlier.  (Id. Ex. I.)  Plaintiff alleges that this write-up, prepared the day after he informed Reilly that he intended to complain about her to the EEOC, was retaliatory.  He further avers that Reilly stepped up her harassment and retaliation of him by refusing to send him to the annual TOPOFF exercises, a national disaster preparedness training program, and instead, sending another woman in his place.  (Tseng Decl. Ex. A at 345:1-346:3; Pl.'s Ex. O ¶ 30.)  In addition, Reilly apparently ignored efforts by another manager to transfer Plaintiff to him, away from Reilly.  (Pl.'s Ex. R at 25:16-20, 26:14-17.)

On or about April 4, 2005, Reilly verbally notified Plaintiff that he was not going to be renewed.  (Tseng Decl. Exs. L and M (response to Request for Admission No. 14).)  Reilly subsequently "documented" Plaintiff's alleged performance problems by preparing a written memorandum on April 14, 2005, even though the particular incidents had occurred months earlier.  (Pl.'s Ex. L.)  In addition, Reilly publicly expressed her disdain for Plaintiff.  On April 26, 2005, Reilly and other managers were at a training center where she boasted about retaliating against Plaintiff.  (Id. Ex. A. ¶ 20.)  When Plaintiff's name came up in conversation, Reilly emphatically announced "I got that son-of-a-bitch." (Id. ¶ 22.)  She stated aloud that she had decided to "strangle" Plaintiff by not deploying him, with the intention of hurting him financially.  (Id.)  Reilly felt that this was a surefire way of to "get rid of him."  (Id.)  She made these comments in front of senior FEMA personnel, who expressed no reaction.  (Id.)

In early May 2005, Plaintiff contacted an EEO counselor to complain about what he perceived as discriminatory treatment by Reilly.  (Id. Ex. O ¶ 35; Ex. P ¶ 2; Tseng Decl. Ex. A at 203:8-25.)  Plaintiff alleges that in response to his complaint to the EEOC as well as his earlier notification to Reilly of his intent to file such a complaint, Defendant formally issued a letter of non-renewal on or about May 16, 2005, two days after Reilly prepared her last write-up of the Plaintiff.  (Id. Ex. L.)  Curiously, Defendant did not send out the letter until months later on July 13, 2005.  (Id.)

Plaintiff filed the instant action in this Court on April 1, 2008. His Complaint alleges four claims for relief: (1) sex discrimination under Title VII; (2) age discrimination under the ADEA; (3) hostile work environment under the ADEA and Title VII; and (4) retaliation under Title VII and the ADEA. Defendant now moves for summary judgment on all claims.[1] Plaintiff opposes the motion.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the claim. See Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for motion for summary judgment. Fed.R.Civ.P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

---

[1] Defendant's reply brief exceeds the maximum page limit in violation of Local Rule 7-3(c). In addition, Defendant inappropriately raises a number of new arguments for the first time in his reply. The parties are warned that the Court will not consider briefs that fail to comport with the Federal Rules of Civil Procedure, Local Rules or the Standing Orders of this Court.

## III. DISCUSSION

### A. TIMELINESS OF EEO CONTACT

Defendant first argues that Plaintiff's complaint is time-barred on the ground that he did not initiate contact with an EEO counselor within 45 days of the discriminatory conduct, as required by 29 C.F.R. § 1614.105(a)(1). See Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002). Specifically, Defendant argues that the last discriminatory act occurred on April 4, 2005, when Reilly verbally informed Plaintiff that he was not being renewed, thus affording Plaintiff until May 19, 2005, to contact the EEOC. (Tseng Decl. Ex. A at 203:8-25; Def.'s Mot. at 11.) Defendant claims that Plaintiff waited until June 8, 2005 before seeking assistance from an EEO counselor, which is more than 45 days after April 4, 2005. (Mot. at 11.)

There is a genuine factual dispute regarding whether Plaintiff timely initiated contact with the EEOC. Defendant asserts that Plaintiff acknowledged in an affidavit presented to the EEOC that he first contacted an EEO counselor on June 8, 2005. (Def.'s Mot. at 12 (citing Pl.'s Ex. O ¶ 16-17).)[2] Yet, as Plaintiff points out, in response to another question in the same questionnaire, he clarifies that he, in fact, first contacted the EEOC in early May 2005. (Pl.'s Ex. O ¶ 35.) This is consistent with Plaintiff's deposition testimony where he states that he first contacted the Office of Equal Rights sometime between May 1 and May 15, and called them again on June 8, 2005. (Tseng Decl. Ex. A at 210:11-15; 211:16-18.) At a minimum, the record demonstrates that there is a disputed issue of fact as to whether Plaintiff has satisfied the timing requirements of 29 C.F.R. § 1614.105(a)(1).

### B. GENDER AND AGE DISCRIMINATION

#### 1. Analytical Framework

Title VII provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex* or national origin." 42 U.S.C.2000e-2(a)(1) (emphasis added). Similarly, the ADEA provides that as to persons age 40 and over, "[i]t shall be unlawful for an employer …

---

[2] The affidavit is presented in a question-answer "complaint interview" format prepared by the EEOC, as opposed a declaration prepared by the affiant used in litigation.

to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(2).

A plaintiff may prove unlawful discrimination by producing "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007). Alternatively, a plaintiff may rely on the familiar McDonnell Douglas burden shifting framework to prove discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008). Though the McDonnell Douglas approach was developed in the context of a race discrimination claim, it also applies to sex (gender) and age discrimination cases. See Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008); Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir. 1986).

The McDonnell Douglas steps are as follows. *First*, Plaintiff must establish a prima facie case of discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly-situated individuals outside the protected class were treated more favorably. See, e.g., Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1105-1106 (9th Cir. 2008). *Second*, if a plaintiff establishes the prima facie case of discrimination, the burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct." Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003). *Finally*, if the employer articulates a legitimate reason for its action, "the employee must then prove that the reason advanced by the employer constitutes a pretext for unlawful discrimination." Diaz, 521 F.3d at 1207. Regardless of who bears the burden of production, the employee always retains the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee. Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1982).

### 2. Prima Facie Case

Defendant acknowledges that Plaintiff is in a protected class based on his gender (male) and age (65), but contends that he cannot meet the remaining necessary elements for a prima facie case

**1**  of discrimination.  As will be discussed below, the Court finds that there are questions of fact as to
**2**  whether Plaintiff's job performance was satisfactory and Plaintiff has shown that he suffered an
**3**  adverse employment action.  However, Plaintiff has failed to carry his burden with respect to the
**4**  final element of his prima facie case, which it to show that similarly-situated employees outside his
**5**  protected classes were treated more favorably in connection with Defendant's decision to not
**6**  renew his employment agreement.

### *a)* *Job Performance*

The second prong of the McDonnell Douglas test concerns whether the aggrieved employee "was performing his job in a satisfactory manner[.]"  Messick v. Horizon Indus. Inc., 62 F.3d 1227, 1229 (9th Cir. 1995).  To meet his initial burden, Plaintiff proffers various performance appraisals from February 2002 through March 2005, which show that he consistently received "satisfactory" marks, which is the highest rating possible.  (Pl.'s Ex. D ¶ 6; Ex. F at 2-12.)  His supervisors (other than Reilly) characterized Plaintiff as "dependable, produces quality work in a timely manner, communicates safety concerns effectively to management and staff and is cooperative in working with all sections and providing safety services."  (Id. at 13.)  Another reviewer in October 2004 commented that "Ernie is conscientious, dedicated to the safety of the mission, and works well with others."  (Id. at 14.)  Notably, the only deployment for which he did not receive a favorable review was the one overseen by Reilly.  (Id. Ex. D ¶ 7.)

Defendant attempts to dismiss the positive performance reviews on the ground that they were prepared by local field supervisors, not managers at FEMA headquarters.  (Reply at 5.)  On its face, this argument is illogical, since locally-based supervisors ostensibly would be better situated to accurately evaluate Plaintiff's performance than someone removed from the field.  Defendant also argues that Plaintiff was criticized on numerous occasions for inappropriate conduct including misstatements in two emails, employee complaints, speaking inappropriately to Reilly and writing rude emails about travel payments.  (Def.'s Mot. at 5-10.)  At best, Defendant's evidence shows that there is a genuine dispute concerning whether Plaintiff was satisfactorily performing his job.  As such, this element of Plaintiff's prima facie case cannot be resolved on summary judgment.

**1**            *b)     Adverse Employment Action*

**2**      For purposes of a Title VII disparate treatment claim, an "adverse employment action is one

**3** that materially affect[s] the compensation, terms, conditions, or privileges ... of employment."

**4** Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  Plaintiff alleges that Defendant

**5** refused to renew his annual appointment for discriminatory reasons.  Defendant does not dispute

**6** that the non-renewal of Plaintiff's term constitutes an adverse employment action.  See Jadwin v.

**7** County of Kern, 610 F. Supp. 2d 1129, 1171 (E.D. Cal. 2009) (non-renewal of contract sufficient

**8** to show an adverse employment action) (citing cases).  In addition, warnings and negative

**9** performance reviews can also constitute an adverse employment action.  See Fonseca v. Sysco

**10** Food Servs. of Ariz., Inc., 374 F.3d 840, 848 (9th Cir. 2004) ("A warning letter or negative review

**11** also can be considered an adverse employment action."); Yartzoff v. Thomas, 809 F.2d 1371, 1376

**12** (9th Cir.1987) (negative performance review may constitute an adverse employment action).

**13** Plaintiff has thus met his burden of showing an adverse employment action.

**14**      Nevertheless, the Court cannot find on this record that the Defendant's failure to send

**15** Plaintiff to the annual TOPOFF training (the annual national disaster preparedness exercise)

**16** constitutes an adverse employment action.  (Def.'s Mot. at 15-16; Tseng Decl. Ex. C at 252:18-

**17** 253:14 (discussing TOPOFF).)  Plaintiff has made no showing that his inability to attend such

**18** training had any material impact on the terms and conditions of his employment.  See Shakelford

**19** v. Deloitte & Touche, LLP, 190 F.3d 398, 406-07 (5th Cir. 1999) (denial of employee training does

**20** not constitute an adverse employment action covered by Title VII where it does not result in a

**21** change of employment status, benefits or responsibilities).  As such, the Court concurs with

**22** Defendant that the failure to send Plaintiff to the TOPOFF training is not, standing alone,

**23** actionable under Title VII.

**24**             *c)     Similarly Situated Individuals*

**25**      The final element of a Title VII prima facie case of employment discrimination requires the

**26** plaintiff to establish that similarly-situated employees outside the protected class were treated more

**27** favorably.  See Kang v. U. Lim Am., Inc., 296 F.3d 810, 818 (9th Cir. 2002).  To meet this

**28** requirement, the plaintiff must show that the persons whom he claims were treated more favorably

were "similarly situated in all material respects." Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006); accord Vasquez v. County of L.A., 349 F.3d 634, 641 (9th Cir. 2004) (holding "individuals are similarly situated when they have similar jobs and display similar conduct"); Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2004) (upholding grant of summary judgment where employee failed to show that similarly-situated employees were treated more favorably); Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (holding that, to be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct).

Plaintiff's opposition fails to identify any *similarly-situated* younger or female employees who replaced him or had their DAE appointments renewed while his was not. When asked during his deposition to identify any similarly-situated younger employees, the only person Plaintiff could identify was Dick Seeds. (Tseng Decl. Ex. A at 346:4-347:7.) Yet, Plaintiff admitted that he did not know Seeds' age, (id. at 347:6-7), and Seeds actually is *older* than Plaintiff, (Seeds Decl. ¶ 3). As to similarly-situated female employees, the only person Plaintiff could identify was Ellen Clas, whom he alleged was allowed to attend the TOPOFF exercises while he was not. (Id. at 345:1-346:3.) As discussed above, the fact that Plaintiff was not sent to the TOPOFF training does not constitute an adverse employment action. But even if it did, Plaintiff has failed to proffer any evidence to establish that Clas (or any other woman) was similarly-situated to him in all material respects. Having failed to show that any *similarly-situated* female or younger employee had their employment agreement renewed or was otherwise treated more favorably compared to Plaintiff, Plaintiff cannot meet his burden of demonstrating a prima facie case of age or gender discrimination, as a matter of law. The Court thus GRANTS Defendant's motion for summary judgment as to Plaintiff's first and second claims for gender and age discrimination, respectively.

### C.  HOSTILE WORK ENVIRONMENT

To prevail on a hostile workplace claim based on gender or age, Plaintiff must show: (1) that he was subjected to verbal or physical conduct of a discriminatory nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. See Fuller v.

City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995). The work environment must be perceived as abusive both subjectively and objectively. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993); Vasquez, 349 F.3d at 642. In determining whether conduct was sufficiently severe or pervasive, the court examines "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal citations and quotations omitted).

To be actionable under a hostile work environment theory, the conduct must be severe. For example, in Nichols v. Azteca Restaurant Enters., Inc., 256 F.3d 864 (9th Cir. 2001), the Ninth Circuit held that the plaintiff was subjected to an objectively hostile work environment where he was subjected to an "unrelenting barrage of verbal abuse…." Id. at 872. Plaintiff's co-workers and supervisor referred to Plaintiff in Spanish and English as "she" and "her" and mocked him for carrying his serving tray "like a woman." Id. He also was subjected to name-calling in both English and Spanish with epithets such as "faggot" and "fucking female whore." Id. at 870. This abuse occurred at least once a week and often several times a day. Id. Based on the record presented, the court held that the conduct directed at Plaintiff was designed to humiliate and anger him, and was sufficiently severe and pervasive to alter the terms and conditions of his employment. Id. at 873.

Here, the evidence proffered by Plaintiff is insufficient, as a matter of law, to sustain his hostile work environment claim. Though he has not alleged any gender-specific incidents directed at him, Plaintiff alleges that female workers appeared to receive preferential deployments to disaster areas compared to men. (Tseng Decl. Ex. A at 345:1-346:3.) He also claims that Reilly "seemed" to treat men more abruptly than women. (Pl.'s Ex. O ¶ 70.) However, Plaintiff's conclusory assertions are insufficient to show that he was subject to conduct that was "severe or pervasive enough to alter the conditions of her employment and create an abusive work environment." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir.2000) (internal quotation marks and brackets omitted).

The other evidence adduced by Plaintiff also is insufficient to create a genuine issue of material fact. Plaintiff presents the affidavit of Raoul M. Haw, who characterized Reilly as "a very difficult person to work with." (Id. ¶ 27.) Haw also indicated that he had received "calls from lots of guys indicating there are problems because of her." (Id.) Aside from being hearsay, Haw's statements fail to provide any specifics regarding the specific nature or frequency of Reilly's conduct in that regard. See Orr, 285 F.3d at 773-74 (hearsay evidence cannot be used to create a triable issue of fact). Likewise, the affidavits of Owen N. Motter and Gordon L. Dilmore support the notion that Reilly had a "hostile" management style, but neither provides any supporting facts nor do they attribute her hostility to animus against men specifically. (Id. Ex. B at 15-17; Ex. A at 15-16.) While these affiants support the conclusion that Reilly may have been a poor manager who at times acted capriciously, it does not show that such conduct created a severe and pervasive hostile work environment for men, as envisioned by the applicable standard as set forth above. C.f., Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] because of sex.").

Moreover, the Ninth Circuit has rejected hostile work environment claims involving circumstances far more severe and pervasive than those at issue here. See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1031, 1037 (9th Cir. 1990) (affirming conclusion that plaintiffs failed to prove a hostile work environment even where the employer allegedly made racially offensive slurs, kept illegal personnel files on the plaintiffs because they were Latinos, provided unsafe vehicles to Latino police officers, posted a racially offensive cartoon, targeted Latinos when enforcing rules, and did not provide adequate back-up to Latino police officers); Vasquez, 349 F.3d at 643-44 (finding no hostile environment even where plaintiff was told that he should consider transferring to work in the field because "Hispanics do good in the field," was told that he had "a typical Hispanic macho attitude," a co-worker made continual, false complaints about the plaintiff to his supervisor, and plaintiff was yelled at in front of others); Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003) (finding that jokes using the phrase "China man," ridiculing for

mispronunciation of names, and employees pulling their eyes back with their fingers to mock the appearance of Asians did not constitute a hostile work environment for a Chinese woman).

Plaintiff's hostile work environment claim based on his age fares no better. Plaintiff asserts that in 2004, Reilly called him "old school" and "out of date." (Pl.'s Ex. D ¶ 15.) Raoul Haw, another older DAE employee (DOB 8/18/29), states that he heard that Reilly referred to him (Haw) as being part of the "over the hill gang." (Id. Ex. C ¶ 26.) Although the Ninth Circuit has never definitively recognized an age-related hostile work environment claim, see Vasquez, 349 F.3d at 642 (discussing only race and gender), even if such a claim is cognizable, Plaintiff fails to provide sufficient evidence of such a claim.

As discussed above, a hostile work environment claim must be supported by discriminatory conduct that is both severe and pervasive. At most, Plaintiff has shown stray and/or sporadic comments that, as the above-discussed legal authorities confirm, are legally insufficient to constitute an impermissible, hostile work environment. See also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1284-85 (9th Cir. 2000) (employer's statement that plaintiff was not "young and promotable" insufficient to overcome summary judgment); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir. 1990) (hiring supervisor's statement that he replaced plaintiff with younger worker because he was a "bright, intelligent, knowledgeable young man" insufficient to overcome summary judgment). The Court therefore GRANTS Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim.

### D. RETALIATION

"The elements of a prima facie retaliation claim are, (1) the employee engaged in a protected activity, (2)[ ]he suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94 (9th Cir. 2008). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3). An adverse employment action is one that is "reasonably likely to deter employees from engaging in protected activity." See Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

"That an employer's actions were caused by an employee's engagement in protected activities may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1197 (9th Cir. 2003); Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000). There is no bright-line test regarding the temporal proximity between the protected activity and the adverse employment action. See Allen v. Iranon, 283 F.3d 1070, 1078 (9th Cir. 2002) ("Although an inference from temporal proximity would have been stronger had the gap in time been smaller, an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory."). Notice of an intention to engage in EEO activity may support a retaliation claim. See Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025, 1035 (5th Cir. 1980).

Defendant argues that Plaintiff's retaliation claim fails as a matter of law on the ground that the allegedly retaliatory conduct occurred *prior to* May 2005, when Plaintiff filed his EEO complaint. (Pl.'s Mot. at 24.) That contention lacks merit. Well before then, on November 9, 2004, Plaintiff notified Reilly that he intended to file an EEO complaint against her. (Pl.'s Ex. J.) The day after Plaintiff informed Reilly of his intentions, Reilly prepared a lengthy write-up purporting to document Plaintiff's allegedly improper actions in connection with the Florida assignment, even though that incident had occurred months earlier. The timing of Reilly's write-up is particularly telling, given her deposition testimony that her typical practice is to counsel employees "as soon as possible" following an incident. (Pl.'s Ex. E at 111:18-21.) In addition, Plaintiff points to other examples of alleged retaliation, including, without limitation, refusing to send him to TOPOFF, writing him up again on April 14, 2005, and ultimately, declining to renew his employment for another year despite the fact that his employment had been consistently renewed since his initial hiring. (Pl.'s Exs. K and L.)

In addition, Reilly's retaliatory motive also is supported by her public admission on April 26, 2005, where she openly declared in front of other FEMA managers and personnel that, "I got that son-of-a-bitch," and that her plan had been to "strangle" him financially to "get rid of him." (Id. Ex. A ¶ 22.) Given the temporal proximity of Plaintiff's EEOC activity, Defendant's allegedly

retaliatory conduct and Reilly's statements, a trier of fact could find that Plaintiff suffered adverse employment actions as a result of engaging in protected activity.[3]  C.f., <u>Iwekaogwu v. City of Los Angeles</u>, 75 Cal. App. 4th 803, 816 (1999) ("Direct evidence of retaliation may consist of remarks made by decision-makers displaying a retaliatory motive.").  The Court thus DENIES Defendant's motion for summary judgment as to Plaintiff's fourth claim for retaliation.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's first claim for gender discrimination, second claim for age discrimination and third claim for hostile work environment.  The motion is DENIED as to Plaintiff's fourth claim for retaliation.

IT IS SO ORDERED.

Dated: July 16, 2009

                                     Hon. Saundra Brown Armstrong
                                     United States District Judge

---

[3] Defendant argues that there was no causal link between the protected activity and the adverse employment actions, claiming that FEMA had legitimate concerns regarding Plaintiff's job performance and conduct.  However, as discussed above, there are questions of fact regarding whether Plaintiff was performing his job in a satisfactory manner and more than adequate evidence of retaliation to submit to a jury.